1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA BOZIC, on behalf of herself, all others similarly situated, and the general public, | Case No. 16-cv-733-BAS(MDD) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE** |
| v. | **[ECF No. 38]** |
| HENNY DEN UIJL, *et al.*, | |
| Defendants. | |

Plaintiff Regina Bozic commenced this class action against numerous defendants, including Obesity Research Institute ("ORI"), Henny Den Uijl, and Bryan Corlett, arising from allegations of misrepresentation and fraud related to a weight-loss product known as Lipozene. Defendants now move to stay this action under the *Colorado River* doctrine, or alternatively, transfer this action to the Eastern District of California for consolidation with an earlier-filed action under the "first-to-file" rule.

//

//

– 1 –

16cv733

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Defendants' motion to transfer this action to the Eastern District of California.

## I. BACKGROUND[1]

On March 29, 2016, Plaintiff commenced this action alleging that Defendants made misrepresentations and false statements in the advertising, marketing, and sale of the weight-loss product known as Lipozene.[2] (Compl. ¶ 6.) These statements were allegedly made on Lipozene's packaging in addition to online and television marketing, advertisements, and "fake testimonials." (*Id.* ¶¶ 74-85.) A sample of these statements include representations that Lipozene is "Clinically Proven" and that it helps consumers "Lose Weight Without Diet or Exercise," "Helps Reduce Weight," and "Helps Reduce Body Fat." (*Id.* ¶¶ 4, 74-75.) Other representations also include claims that a "Clinical Study Proves: 78% of weight lost is pure body fat," and "In a double blind study, not only did participants lose weight but 78% of each pound lost was pure body fat!" (*Id.* ¶ 75.)

Based on these and other allegations in the complaint, Plaintiff asserts nine claims for: (1) declaratory judgment of Plaintiff and the putative class' rights "as Intended Beneficiaries to the 2005 Stipulated Final Judgment contract that was entered into between Defendants and the Federal Trade Commission"; (2) intentional

---

[1] Both parties request judicial notice of various documents, mostly consisting of court filings. Insofar as the Court relies on any of these filings, the Court **GRANTS** the parties' request for judicial notice. *See* Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). The Court **DENIES** all remaining requests for judicial notice.

[2] Defendants Bryan Corlett and Conversion Systems have since been dismissed from this action. The former was voluntarily dismissed by Plaintiff, and the latter was dismissed by the Court at the joint request of the parties. (ECF Nos. 23, 37.)

misrepresentation, fraud, and deceit; (3) negligent misrepresentation; (4) quasi-contract / unjust enrichment; (5) violations of the Unfair Competition Law ("UCL"); (6) violations of the Consumer Legal Remedies Act ("CLRA"); (7) false advertising; (8) breach of express warranty; and (9) breach of the implied warranty of merchantability.

The complaint includes two proposed class definitions: (1) the Intended Beneficiary Class; and (2) the Consumer Fraud Classes. With certain exclusions, the proposed class for the former is defined as:

> All purchasers of the Lipozene Products in the United States for personal or household use and not for resale from the time when the Products entered into the stream of commerce until the time that a final judgment is entered, or within the statute of limitations period, or as otherwise ordered by the Court.

(Compl. ¶¶ 117-18.) And the proposed class for the latter is defined as:

> All purchasers of Lipozene in the United States for personal or household use and not for resale from August 19, 2014 until the date of class certification, or as otherwise deemed appropriate by the Court.
>
> Alternatively, purchasers of Lipozene in the United States for personal or household use and not for resale during the applicable statute of limitations period not to exceed four years prior to Plaintiffs filing of this complaint.

(Compl. ¶ 126.)

Prior to the commencement of this action, two similar class actions related to Lipozene against ORI and other defendants in this action were filed in the San Diego Superior Court, *Duran v. Obesity Research Institute, LLC*, No. 37-2013-00048664-CU-BT-CTL (Cal. Super. Ct. May 13, 2013), and the Eastern District of California, *Fernandez v. Obesity Research Institute, LLC*, No. 13-cv-00975-MCE-KJN (E.D. Cal. May 16, 2013). The actions commenced within days of each other in May 2013. Both also reference a 2005 Stipulated Final Judgment with the Federal Trade Commission regarding marketing glucomanna-based products, such as Lipozene.

**A.** *Duran*

The *Duran* class action, which commenced May 13, 2013, arose from ORI's "manufacture[], market[ing], and sell[ing] [of] the diet supplement known as Lipozene[.]" (*Duran* Compl. ¶ 1.) Some of the allegedly false or misleading statements made by ORI included: (1) ORI "market[ing] and sell[ing] Lipozene as a 'Safe and Effective' 'weight-loss breakthrough' that is 'clinically proven to help you lose weight and pure body fat'"; (2) "the package label for Lipozene represent[ing] that '78% of each pound lost [is] pure body fat,' and the commercial for Lipozene show[ing] an animated pill directly dissolving body fact on contact"; and (3) "the website for Lipozene represent[ing] that the product will 'get rid of pounds of body fat,' 'has no known side effects,' and 'can help you lose weight without a change in lifestyle.'" (*Id.*)

Based on these and other allegations in the complaint, the *Duran* plaintiff asserted five claims for: (1) violations of the CLRA; (2) unlawful business acts and practices in violation of California Business & Professions Code § 17200; (3) false advertising; (4) breach of express warranty; and (5) breach of implied warranty.

The proposed classes in *Duran* are defined as:

> All persons, nationwide, who purchased Obesity Research Institute diet products after August 10, 2012 *until the date notice is disseminated*. Excluded from the Class are Defendants' officers, directors and employees and those who purchased Obesity Research Institute diet products for the purpose of resale.

(*Duran* Compl. ¶ 19 (emphasis added).) The *Duran* plaintiff also brought the class action on behalf of:

> All persons who purchased Obesity Research Institute diet products in the State of California after August 10, 2012 until the date notice is disseminated. Excluded from the Class are Defendants' officers, directors and employees and those who purchased Obesity Research Institute diet products for the purpose of resale.

(*Id.* ¶ 20.)

– 4 –

16cv733

In November 2013, the *Duran* parties began the process of settling the class action when they filed their joint motion for preliminary settlement approval. (Mulkern Decl. ¶ 4.) In August 2014, the initial notice of settlement was published, and in January 2015, the parties moved for final settlement approval. (*Id.*) On March 24, 2015, the settlement was approved by the court and judgment was entered accordingly. (*Id.*)

Thereafter, objectors appealed to the California Court of Appeal, asserting: (1) "the settlement is the product of collusion"; (2) "the class did not receive sufficient notice of settlement, and the settlement is unreasonable and inadequate"; and (3) "the attorney fee award is excessive." *Duran v. Obesity Research Inst., LLC*, 1 Cal. App. 5th 635, 637-38 (2016). The *Duran* objectors are plaintiffs in the competing putative class action, *Fernandez*, against ORI. *Duran*, 1 Cal. App. 5th at 642.

In reviewing the objectors' appeal, the Court of Appeal identified a defect in the class notice, necessitating reversal of the judgment "because the class notice failed in its fundamental purpose—to apprise class members of the terms of the proposed settlement." *Id.* at 638. It further explained that "[t]he erroneous notice injected a fatal flaw into the entire settlement process and undermines the court's analysis of the settlement's fairness." *Id.* (citing *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 972 (9th Cir. 2007). Ultimately, the Court of Appeal reversed the lower court's judgment, attorney fees award, and incentive payment, and remanded with additional guidance "[f]or the benefit of the parties." *Id.* at 647, 653.

## B.   *Fernandez*

Similarly, the *Fernandez* class action, which commenced May 16, 2013, was brought "on behalf of purchasers of Lipozene, which is marketed by the Defendants [including ORI] as a 'weight-loss breakthrough' that will 'get rid of pounds of body fat' 'without a change in lifestyle.'" (*Fernandez* Compl. ¶ 4.) A sample of the allegedly false or misleading statements on Lipozene labeling and advertising

included: (1) "LOSE PURE BODY FAT"; (2) "Safe and Effective"; (3) "78% of weight lost is pure body fat"; (4) "Clinically Proven"; (5) "has no known side effects"; and (6) "can help you lose weight without a change in lifestyle." (*Id.* ¶ 8.) The *Fernandez* plaintiffs also highlight that "Lipozene's labeling and advertising depict[s] an animated Lipozene pill *directly* dissolving body fat on contact," which is also purportedly false and misleading. (*Id.*)

The *Fernandez* plaintiffs asserted seven claims for: (1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) unjust enrichment; (5) violations of the CLRA; (6) violations of the unfair competition law; and (7) false advertising. The *Fernandez* plaintiff sought to represent a class defined as "all persons in the United States who purchased Lipozene on or after August 10, 2012, excluding those who purchased Lipzoene for resale[,]" and a "subclass of all Class members who purchased Lipozene in the State of California for personal, family or household purposes on or after August 10, 2012[.]" (*Fernandez* Compl. ¶¶ 120-21.)

In August 2013, the *Fernandez* Court denied the defendants' request to transfer venue to the Southern District of California and stayed the action pending the resolution of *Duran*. *Fernandez v. Obesity Research Inst., LLC*, No. 2:13-cv-00975-MCE-LJN, 2013 WL 4587005, at *2-3, 6-7 (E.D. Cal. Aug. 28, 2013). The court denied the transfer, in part, "because a substantial part of the events occurred within" and the plaintiffs also live in the Eastern District. *Id.* at *3. It imposed the stay, in part, out of "concern[] that it and the San Diego Superior Court [in *Duran*] may reach different conclusions on identical issues if the cases proceed simultaneously[,]" and the belief that it would not be "a wise use of judicial resources to duplicate the San Diego Superior Court's effort and possibly issue a conflicting decision." *Id.* at *6-7.

//

//

## II.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of section 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). The district court has the broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

The Ninth Circuit requires that courts consider a variety of factors in determining whether to transfer an action. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The relevant factors are: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *Barnes & Noble v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011). The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). It is not enough for the defendant to merely show that it prefers another forum, and transfer will also not be allowed if the result is merely to shift the inconvenience from one party to another. *Van Dusen*, 376 U.S. at 645-46.

//

//

//

16cv733

### III.   DISCUSSION

"The 'first to file' rule normally serves the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 749 (9th Cir. 1979). "When applying the first-to-file rule, courts should be driven to maximize 'economy, consistency, and comity.'" *Kohn Law Grp. Inc. v. Auto Parts Mfg. Miss.*, 787F.3d 1237, 1240 (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999)). The rule may be applied "when a complaint involving the same parties and issues has already been filed in another district." *Id.* (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)). In a class action, the court compares the classes, and not the class representatives. *Ross v. U.S. Bank Nat. Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008).

The first-to-file rule "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade*, 946 F.2d at 623. A district court examines three factors in deciding whether to apply the rule: (1) the chronology of the two actions; (2) the identity of the parties involved; and (3) the similarity of the issues at stake. *Id.* at 625. However, the rule is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 628 (internal quotations omitted). Further, "[a]n ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952).

Under the "first-to-file rule," the court is not required to give consideration to the same factors as it would under motions to transfer brought pursuant to 28 U.S.C. § 1404(a). *See Pacesetter Systems*, 678 F.2d at 96. But "[i]n appropriate cases it

– 8 –

would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." *Id.* "However, normally the forum non conveniens argument should be addressed to the court in the first-filed action." *Id.*; *see also Alltrade*, 946 F.2d at 928.

## A.    Chronology

Though *Duran* is the action that has proceeded the furthest, nearing completion, because *Duran* is being litigated in state court, this Court considers whether transferring this action to the Eastern District of California for consolidation with *Fernandez* is appropriate. *See Alltrade*, 946 F.2d at 623. Comparing *Fernandez* and this action, there is no doubt that the first-to-file rule's chronology requirement is satisfied: *Fernandez* commenced on May 16, 2013 while this action commenced on almost three years later on March 29, 2016. (*See* Defs.' RJN Ex. 6.)

## B.    Identity of Parties

"Regarding similarity of the parties, courts have held that the first-to-file rule does not require exact identity of the parties." *Kohn Law*, 787 F.3d at 1240. "Rather, the first-to-file rule requires only substantial similarity of the parties." *Id.* Because this case is a class action, the Court starts with an examination of the proposed classes in the two actions. *See Ross*, 542 F. Supp. 2d at 1020.

In *Fernandez*, the plaintiffs defined the proposed class as all consumers who purchased Lipozene on or after August 10, 2012 with a sub-class for California consumers. (*Fernandez* Compl. ¶¶ 120-21.) The class period is open ended. (*Id.*) Though this action has two proposed classes, both cover consumers who purchased Lipozene, with the Consumer Fraud Class defining the class period from purchases that occurred on August 19, 2014 "until the date of class certification, or as otherwise deemed appropriate by the Court." (Compl. ¶¶ 117-18, 126.) The other class in this action, the "Intended Beneficiary Class," is only relevant to the first claim (out of

nine) for declaratory judgment claim. (*See* Compl. ¶ 119.) The proposed consumer classes are identical in that both include consumers who purchased Lipozene. The only disparity is the class period. But comparing the proposed consumer classes' class periods in the two actions, the proposed class in this action is effectively a subset of the proposed class in *Fernandez*. And both classes in *Fernandez* and this action would most likely be included in any judgment entered in *Duran*. In short, there is substantial overlap between the proposed classes in *Fernandez* and this action.

There is also substantial overlap when comparing the defendants. *Fernandez* was an action brought against Obesity Research Institute, LLC; Continuity Products, LLC; Wal-Mart Stores, Inc.; Henny Den Uijl; and Bryan Corlett. (Defs.' RJN Ex. 6.) This action is also brought against all of the *Fernandez* defendants, excluding Wal-Mart Stores, Inc., but adding Sandra Den Uijl, National Weight Loss Institute, Zodiac Foundation, Conversion Systems, and Innotrac Corporation. Though the disparity appears significant, it is not when considering Plaintiff's allegation that "Defendants ORI, Continuity, Zodiac, and National Weight Loss Institute are the alter egos of Defendants Henny Den Uijl, Sandra Den Uijl, and/or Bryan Corlett." (*See* Compl. ¶ 62.) All of the defendants are effectively sued as a collective actor with the lead representatives—ORI, Mr. Den Uijl, and Mr. Corlett—named in both actions. Similarly, in *Fernandez*, the defendants, excluding Wal-Mart Stores, are also sued as a collective actor where the *Fernandez* plaintiffs allege Mr. Den Uijl and Mr. Corlett "established ORI and Continuity Products for an illegal purpose: to perpetrate fraud." (*Fernandez* Compl. ¶¶ 109-10, 111-19.) Excluding Wal-Mart Stores, the aforementioned "collective actor" in this action is wholly present in *Fernandez*, leading this Court to conclude that there is substantial overlap with the named defendants as well.

Therefore, the identity-of-parties requirement of the first-to-file rule is satisfied. *See Alltrade*, 946 F.2d at 625.

//

– 10 –

16cv733

## C.    Similarity of Issues

"The issues in both cases also need not be identical, only substantially similar." *Kohn Law*, 787 F.3d at 1240-41. "To determine whether two suits involve substantially similar issues, [the court] look[s] at whether there is 'substantial overlap' between the two suits." *Id.* (citing *Harris Cnty., Tex. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999)).

The dominant issue in *Duran*, *Fernandez*, and this action is whether ORI and any related defendant entities are liable to consumers who purchased Lipozene based on allegedly deceitful representations. In fact, the alleged deceitful statements are nearly identical between *Fernandez* and this action (*compare Fernandez* Compl. ¶ 8, *with* Compl. ¶¶ 4, 74-78), and six of the nine claims asserted in this action were also asserted in *Fernandez*. The common claims asserted in both *Fernandez* and this action are: (1) quasi-contract / unjust enrichment; (2) violations of the UCL; (3) violations of the CLRA; (4) false advertising; (5) breach of express warranty; and (6) breach of the implied warranty of merchantability. Of the three remaining claims, Plaintiff's claims for "intentional misrepresentation, fraud, and deceit" and negligent misrepresentation are tort claims that sound in fraud, which also substantially overlap with the common claims because ORI's purported deceitful representations in its advertising, marketing, and labels is precisely at the core of both cases. The same can be said about the MMWA claim asserted in *Fernandez*, which specifically overlaps with the warranty claims asserted in both actions.

The only outlier is the declaratory-judgment claim asserted in this action arising from the 2005 Stipulated Final Judgment with the FTC, where Plaintiff and the class in this action request "a declaration of their rights as Intended Beneficiaries to the 2005 Stipulated Final Judgment contract that was entered into between Defendants and the Federal Trade Commission," and "a declaration of their right to enforce Defendants' compliance with the 2005 Order Granting a Permanent Injunction[.]" (Compl. ¶¶ 137-38.) In addition to the $1.5 million monetary redress,

the 2005 Stipulated Final Judgment "permanently restrained and enjoined" ORI, Henny Den Uijl, Bryan Corlett, and others not named in this action from "making any representation, in any manner, expressly or by implication" that any product containing glucomannan, konjac, or konjac root, such as Lipozene: (1) "Causes rapid or substantial weight loss without the need to reduce caloric intake or increase physical activity"; (2) "Enables users to lose as much as 8 pounds or more per month without the need to reduce caloric intake or increase exercise"; (3) "Works for all users"; or (4) "Causes substantial weight loss through blocking the absorption of fat or calories." (Compl. Ex. 2.) Most, if not all, of these prohibitions describe Defendants' wrongful conduct alleged in both actions that also relate to Lipozene, demonstrating overlap even between the declaratory-judgment claim in this action and the factual issues to be litigated in *Fernandez*. Even discounting any overlap resulting from the declaratory-judgment claim, however, the disparity of a single claim in not enough to overcome the immense weight of the substantially overlapping issues discussed above. *See Kohn Law*, 787 F.3d at 1240-41.

Accordingly, the similarity-of-issues requirement is also satisfied. *See Alltrade*, 946 F.2d at 625. Because *Fernandez* is the first-filed federal action, and the two actions have substantially similar parties and issues, the Court finds that the first-to-file rule applies under the circumstances. *See Kohn Law*, 787 F.3d at 1240-41.

## IV.  CONCLUSION & ORDER

Having concluded that the first-to-file rule applies, the Court must now determine whether to transfer, stay, or dismiss this action. *See Alltrade*, 946 F.2d at 623. Because the *Fernandez* Court has already determined that venue is proper and stayed the case pending the resolution of *Duran*, this Court finds that transferring this action to the Eastern District of California for consolidation with *Fernandez* is appropriate in order to avoid inconsistent judgments and promote efficiency. *See Church of Scientology*, 611 F.2d at 749.

16cv733

1    In light of the foregoing, the Court **GRANTS** Defendants' motion to transfer

2   this action to the Eastern District of California. (ECF No. 38.)

3        **IT IS SO ORDERED.**

4

5   **DATED:  January 31, 2017**

6                                                   Hon. Cynthia Bashant
                                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28